COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

August 13, 2014

James P. Sharp, Esquire
Moore & Rutt, P.A.
122 West Market Street
Georgetown, DE 19947

Elizabeth C. Fillingame, Esquire
Grady & Hampton, P.A.
6 North Bradford Street
Dover, DE 19904

RE:   Sussex County v. Jeanne Sisk and Beulah McQueen
        Civil Action No. 8915-MA

Dear Counsel:

On September 17, 2013, Plaintiff Sussex County filed a complaint for injunctive relief against Defendants Jeanne Sisk and Beulah McQueen concerning an illegal shed located on their lot in a mobile home park in Rehoboth Beach. Pending before me are Plaintiff's Motion for Summary Judgment under Court of Chancery Rule 56 and Motion to Dismiss under Rule 12(b)(6), both of which are opposed by Defendants. For the reasons below, I recommend that the Court grant Plaintiff's motion for summary judgment because Defendants are barred under the doctrine of *res judicata* from re-litigating the issue of the legality of their shed. I

also recommend that the Court dismiss Defendants' counterclaims for abuse of process for their failure to state a claim upon which relief can be granted.

The defendants are a daughter and mother who lease Lot A-16 in Sea Air Mobile City in Rehoboth Beach, Delaware. They own a manufactured home that is located on Lot A-16, and have resided there for nearly 40 years. This is the second time that Sussex County has sought injunctive relief against these Defendants concerning a non-conforming shed on Lot A-16. In 2008, Sisk placed an 8' x 10' shed on the property and, on January 28, 2009, Defendants were sent notice by a Sussex County building official that they were in violation of the rear yard and side yard setback requirements, the separation requirements for structures in a mobile home park, and the requirement to obtain a building permit for the shed. On June 9, 2009, Plaintiff filed a verified complaint for injunctive relief in this Court, requesting the Court find Defendants in violation of the Sussex County Code, permanently enjoin Defendants from continued use of the property in violation of the Code, and require Defendants to bring the property into compliance within 30 days or else Sussex County would undertake removal or demolition of the illegally placed structure at Defendants' expense.[1] This action was stayed on December 14, 2010,[2] pending Defendant Sisk's appeal to Superior

---

[1] *Sussex County v. Sisk et al.*, C.A. No. 4653-MG (Del. Ch.), Docket Item No. 1 ("D.I. #").
[2] *Id.* at D.I. 14

Court from the denials of her appeal and application for a variance by the Sussex County Board of Adjustment (the "Board"), and ultimately dismissed by stipulation of the parties on April 20, 2011,[3] after Sisk lost her appeal in Superior Court.

As recited in the decision of the Superior Court, there were three 8' x 10' sheds placed on Lot A-16 over the nearly 40 years Defendants leased this property.[4] The first shed was placed on a concrete pad behind the mobile home in 1969 by Sisk's stepfather. In the 1990s, Sisk replaced the first shed with another shed of the same size without obtaining a building permit. In 2007, Sussex County put a moratorium on applications for building and placement permits for Sea Air because many of the structures in this old mobile home park were in violation of the current zoning code. On May 30, 2007, Sussex County entered into an agreement with Sea Air whereby Sussex County would treat existing structures in Sea Air as non-conforming structures and not issue any zoning violations for them, but any replacement or new structures would be subject to the current zoning code. In order to place a new structure or replace an existing structure on a lot, a tenant would have to obtain Sea Air's prior written approval, and obtain a survey showing the proposed location of the new or replacement structure. If necessary, the tenant

---

[3] *Id.* at D.I. 15.
[4] *See Sisk v. Sussex County Board of Adjustment*, 2011 WL 855857, at *1 (Del. Super. Feb. 25, 2011).

would have to submit an application for a variance to the Board of Adjustment, together with the survey, for the approval.

In 2008, Sisk replaced her second shed with a third 8' x 10' shed without obtaining a building permit or Sea Air's approval, as a result of which the Sussex County building official issued a violation notice to McQueen and Sisk.[5] When the violation was not corrected, Sussex County filed its first suit against McQueen and Sisk in this Court on June 9, 2009. Shortly thereafter, on June 25, 2009, Sisk filed an appeal of the violation notice and an application for a variance with the Board of Adjustment.

Sisk's appeal and application were originally rejected as untimely and incomplete because her application for a variance did not include a survey, but the Board relented and accepted an amended appeal and application on July 29, 2010.[6] After a hearing, the Board denied Sisk's appeal as untimely and rejected her application for a variance because without a survey the Board could not make an informed decision.

Sisk appealed the decisions of the Board of Adjustment to the Superior Court, which upheld those decisions, ruling in part: "Sisk's second shed was never a lawful non-conforming structure. She acknowledged that it was built without a building permit. ... Replacing an unlawful non-conforming structure with another

---

[5] *Id.* at *2.

unlawful non-conforming structure does not cleanse the original unlawfulness."[7]

After Sisk lost her Superior Court appeal, Defendants removed their shed from Lot A-16, and the shed remained off the property for approximately one year. In 2012, Defendants returned the shed to Lot A-16 and placed it in the same location on their lot.

On January 7, 2014, Defendants filed an amended answer to the Plaintiff's second petition for injunctive relief, alleging that the shed was not in violation of the Sussex County Code because a building permit had been issued in 1969 for the construction of an 8' x 10' shed on Lot A-16. Defendants also counterclaimed that the Sea Air homeowners, in general, and Sisk, individually, had been subjected to abuse of process by Sussex County.

Plaintiff now argues that Defendants are barred by the doctrines of *res judicata* and collateral estoppel from re-litigating the issue of the illegality of the shed and from claiming abuse of process. Defendants counter that these doctrines do not apply because Defendant McQueen was not a party to the 2010 Superior Court appeal, and McQueen was the only person at that time with knowledge of the existence of the 1969 building permit. Defendants also argue that Defendant Sisk was a *pro se* litigant and did not possess the knowledge necessary to make an abuse of process claim during the 2010 litigation. Furthermore, they contend that

---

[6] *Id.*

additional facts regarding this claim have been discovered since the 2010 litigation, i.e., either Sussex County made a mistake in denying the existence of the 1969 permit or else the County deliberately defrauded the court in denying the existence of the permit.

At my request, the parties submitted memoranda on the issue of whether, under the doctrine of *res judicata*, McQueen was privy to the Superior Court appeal that was brought by Sisk. Defendants contend that McQueen should not be bound by the 2011 Superior Court ruling because she was not a named party to the action nor was she privy to the details surrounding the litigation. McQueen admits in an affidavit that she knew of the litigation about the shed between her daughter and Sussex County, but she was not aware that the existence of a building permit was at issue. If McQueen had known that the existence of the building permit was disputed, she would have come forward with the information that a building permit had been obtained in 1969 for both the addition to her home and the construction of a shed. Sisk admits in her affidavit that she purposely kept her mother out of the Superior Court appeal and did not discuss the case with her because of her age and poor health. Plaintiff nevertheless argues that McQueen should be bound by the Superior Court ruling because mother and daughter clearly had a close relationship

---

[7] *Id.* at *6.

and their interests were sufficiently aligned as tenants in maintaining a shed on their property.

The doctrine of *res judicata* is designed to prevent unnecessary and burdensome litigation about facts and theories that have been or should have been litigated previously.[8] The five elements that are needed to establish *res judicata* are:

(1) The court making the prior adjudication had jurisdiction;

(2) The parties in the present action are either the same parties or in privity with the parties from the prior adjudication;

(3) The cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case;

(4) The issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case; and

(5) The prior adjudication must be final.[9]

As to the first element, it is undisputed that Superior Court had jurisdiction over the appeal from the Board of Adjustment.[10] Second, Sisk initiated the appeal and both Sisk and Sussex County were parties to the Superior Court appeal. The parties, however, dispute whether McQueen was in privity with Sisk. "Privity is

---

[8] *Elliott v. Danberg,* 2013 WL 6407676, at *2 (Del. Super. Dec. 6, 2013).
[9] *Bailey v. City of Wilmington,* 766 A.2d 477, 481 (Del. 2001) (citations omitted).
[10] *See* 9 *Del. C.* § 6916.

… 'a legal determination for the trial court with regard to whether the relationship between the parties is sufficiently close to support preclusion.'"[11] The record shows that Sisk was acting on her own behalf *and* as an agent for her mother in pursuing her *pro se* appeal in Superior Court. McQueen was aware of the litigation that her daughter was having with Sussex County about the shed even though she was not aware of all the details. Sisk admitted handling all disputes for her mother because of McQueen's health – McQueen has had heart problems since 2011 and has been advised by her physician to avoid stress. The attorney who represented Sisk in her appeal to the Board from the violation notice and her application for a variance also represented both Sisk and McQueen in Sussex County's first action against them in this Court, C.A. No. 4653-MG. This attorney, although he never directly communicated with McQueen, assumed that Sisk was properly acting as her mother's agent because their interests were the same. This same attorney, on behalf of Sisk and McQueen, subsequently stipulated to the dismissal of C.A. No. 4653-MG,[12] thus inducing the County reasonably to suppose that the denial of Sisk's appeal in Superior Court had the effect of determining the legal obligations of both Sisk and McQueen.[13] Therefore, I conclude that McQueen was in privity

---

[11] *Aveta Inc., v. Cavallieri*, 23 A.3d 157, 180 (Del. Ch. 2010) (quoting *Higgins v. Walls*, 901 A.2d 122, 138 (Del. Super. 2005)).

[12] *Sussex County v. Sisk et al.*, C.A. No. 4653-MG (Del. Ch.) D.I. 15.

[13] *Aveta Inc.*, 23 A.3d at 180 (citing *Kohls v. Kenetech Corp.*, 791 A.2d at 763, 769 (Del. Ch. 2000)).

with Sisk during the Superior Court appeal not only because the two women have a close familial relationship and their interests were aligned on the issue of the shed, but also because of Sisk's conduct in acting as her mother's agent throughout the entire litigation process.

As to the fourth element, the cause of action in the prior litigation concerned the legality of the placement of a third shed on Lot A-16 in 2008. In 2011, the Superior Court upheld the Board of Adjustment's denial of Sisk's appeal from the violation notice and denial of Sisk's application for a variance. Since no appeal was taken from the Superior Court's decision, the illegality of 2008 placement of a shed on Lot A-16 was finally determined in the prior litigation, thus satisfying the fifth element. The current litigation brought by Plaintiff to remove the shed that Defendants subsequently placed in the same location on Lot A-16 raises the exact same legal issues that were decided adversely to Sisk in 2011. Therefore, Defendants are precluded under the doctrine of *res judicata* from re-litigating these issues

Plaintiff also argues that Defendants' counterclaims should be dismissed because they should have been raised during the prior litigation and are now untimely. Defendants respond by claiming that as a *pro se* litigant, Sisk did not possess the knowledge to make an abuse of process claim during the 2010 litigation; moreover, facts supporting these claims have been discovered since the

2010 litigation concerning Sussex County's possible knowledge of the existence of the 1969 building permit.

In their counterclaims, Defendants allege that Sisk was targeted by Sussex County because she served as president of the homeowners association in Sea Air for many years and was vocal in opposing the County on various issues for the benefit of the homeowners of Sea Air. Defendants allege there are many sheds in Sea Air that are also in violation of the Code but their owners have not been violated for non-compliance, thus demonstrating that Sisk has been targeted by the County and this dispute has been an abuse of process. Further, Defendants allege that the Sea Air community as a whole has been vocal in its opposition to County action, and that the County has maliciously and arbitrarily imposed only on Sea Air homeowners the requirement that they obtain variances and surveys in conjunction with a building permit; hence, this is another abuse of process by Sussex County, according to Defendants.

"The elements of a claim of abuse of process are: (1) an ulterior motive; and (2) a willful act in the use of the legal process that is not proper in the regular conduct of the proceedings, i.e., the current litigation."[14] Some form of coercion to obtain an advantage that is not properly involved in the proceeding itself must be shown, such as obtaining the surrender of property or the payment of money by use

of the process as a threat. Abuse of process as a claim pertains to the "perversion of the process after it has been issued" as opposed to malicious prosecution which focuses on the initiation of that process.[15]

Defendants are focusing on the initiation of the legal process, i.e., Sisk individually being targeted with a notice of violation or Sea Air homeowners generally being denied building permits, rather than on any alleged coercion by County officials during the regular conduct of the legal proceedings. As a result, Defendants have failed to state a claim of abuse of process in both counterclaims. Therefore, I recommend that the Court grant the motion to dismiss the counterclaims for failure to state a claim upon which relief may be granted.

For the reasons above, I recommend that the Court grant Plaintiff's motion for summary judgment and motion to dismiss.

Respectfully

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[14] *Preferred Investment Services, Inc. v. T & H Bail Bonds, Inc., et al.,* 2013 WL 3934992, at *23 (Del. Ch. July 24, 2013).

[15] *Id.* (quoting *Pfeiffer v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 7062498, at * 16 (Del. Super. Dec. 20, 2011)).